**In re PEDIATRICS AT WHITLOCK, P.C., Debtor.**

**No. 14–52367–MHM.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed March 4, 2014.

Filed March 5, 2014.

Paul Reece Marr, Paul Reece Marr, P.C., Atlanta, GA, for Debtor.

Lindsay N.P. Swift, Office of the U.S. Trustee, Atlanta, GA, for U.S. Trustee.

**ORDER**

MARGARET H. MURPHY,
Bankruptcy Judge.

■ Debtor filed a Chapter 11 petition initiating this case February 3, 2014. On the petition, Debtor indicated that it is a "Health Care Business" for which a patient care ombudsman might be appointed under 11 U.S.C. § 333. On February 27, 2014, Debtor filed a *Motion for Order Finding and Ordering that Appointment of Patient Care Ombudsman is not Necessary* (Doc. No. 34) (the "Motion"). In determining whether an ombudsman is needed, courts have weighed nine non-exclusive factors:

(1) the cause of the bankruptcy;

(2) the presence and role of licensing or supervising entities;

(3) the debtor's past history of patient care;

(4) the ability of the patients to protect their rights;

(5) the level of dependency of the patients on the facility;

(6) the likelihood of tension between the interests of the patient and the debtor;

(7) the potential injury to the patients if the debtor drastically reduced its level of patient care;

(8) the presence and sufficiency of internal safeguards to ensure the appropriate level of care; and

(9) the impact of the cost of the ombudsman on the likelihood of a successful reorganization.

*In re Alternate Family Care*, 377 B.R., 754, 758 (Bankr.S.D.Fla.2007); *In re Flagship Franchises of Minnesota, LLC*, 484 B.R. 759 (Bankr.D.Minn.2013) (quoting *Alternate Family Care* and collecting cases).

■ Generally, the first factor weighs against the appointment of an ombudsman when the cause of Debtor's bankruptcy is something other than deficiencies, or allegations of deficiencies, in patient care. *See, Alternate Family Care*, 377 B.R. at 759 (that the bankruptcy was precipitated by a fire at Debtor's facility, rather than patient care or privacy matters, weighed against appointment of an ombudsman); *In re The Total Woman Healthcare Center P.C.*, 2006 WL 3708164 (Bankr.M.D.Ga.,

December 14, 2006) (J. Hershner) (declining to appoint an ombudsman because the debtor's liabilities arose from taxes rather than deficient patient care). Nothing in the record indicates that Debtor's bankruptcy was predicated by deficiencies in patient care, and the Motion asserts that "No claims have been made against Debtor's malpractice insurance" and "Debtor is unaware of any professional malpractice claims, or incidents that could result in claims, against anyone associated with Debtor." For the same reasons, the third factor appears to weigh in favor of granting Debtor's Motion.

Factors four and five also weigh against the appointment of an ombudsman. *Alternate Family Care* involved a foster care and placement agency which provided psychiatric, residential treatment services to emotionally disturbed children. The court in that case concluded that children are generally presumed to be unable to preserve and protect their own interests, and that presumption is particularly appropriate in the case of children with emotional and psychological issues; thus, in that case, the fourth factor weighed in favor of appointing an ombudsman. *Alternate Family Care*, 377 B.R. at 760; *see, also, Flagship Franchises of Minnesota*, 484 B.R. 759 (debtor's patients could not protect their own interests where debtor specialized in care of chronically ill and vulnerable adults, such as those with Alzheimer's, Parkinson's, and brain injuries). Similarly, the fifth factor, as applied to the facts of *Alternate Family Care* and *Flagship Franchises*, weighed in favor of a patient care ombudsman because the patients are unable to protect their own interests. Though Debtor appears to be a pediatric care facility, it is an outpatient facility; nothing in this case suggests that Debtor's patients or their guardians are unable to protect their own interests.

The sixth factor—whether the interests of Debtor and its patients are likely to be in tension—can be evaluated by asking whether a decline in patient care would help Debtor's reorganization. In *Alternate Family Care*, no such tension existed because a decline in patient care would injure the facility's reputation and, consequently, would reduce Debtor's referrals and revenue. 377 B.R. at 760. Similarly, in *Flagship Franchises of Minnesota*, the Court found no tension because, "Without the high standard of care, clients would not use the services and Debtor would lose its licenses." 484 B.R. at 764. For the same reasons, Debtor's incentives in this case appear to align with the interests of Debtor's patients.

As noted by the court in *In re Denali Family Services*, 2013 WL 1755481 at *3 (Bankr.D.Alaska, April 24, 2013), the seventh factor "will almost always support the appointment of an ombudsman." In *Denali*, the court noted that the potential for harm resulting from a drastically reduced level of care is mitigated where other options for treatment are available. Nothing on the record suggests Debtor provides a different type of service than any of the many other pediatric care services in the area. Moreover, the Motion indicates that Debtor maintains comprehensive malpractice insurance.

Neither the Motion nor Debtor's Schedules speak directly to factor two—the presence and role of supervising entities— or factor eight—whether internal safeguards exist to ensure the appropriate level of care. Factor nine—whether the costs associated with the appointment of an ombudsman impacts the likelihood of Debtor's reorganization—is difficult to weigh so early in the case. While Debtor has not presented any evidence of the potential cost of an ombudsman or Debtor's ability

to pay for an ombudsman, this factor typically weighs against an appointment under § 333. *In re Denali Family Services,* 2013 WL 1755481 at *4. Rather than looking at factor nine in isolation, cost of an ombudsman should be weighed against the value of an ombudsman. *Id.* (Finding the cost outweighed the value where other safeguards made an ombudsman redundant). Considering the other factors weigh against appointment of an ombudsman, it appears the costs would likely outweigh the benefits of an ombudsman. Accordingly, it is hereby

ORDERED that the Motion is *granted;* subject to subsequent motion by the United States Trustee or other party in interest under Fed. R. Bankr.P.2007.2(b), no patient care ombudsman will be appointed at this time.

IT IS SO ORDERED.